My name is Mani Subramanian. Speak right up so we can hear you. Yes, my name is Mani Subramanian. I am the pro se appellant in this matter, and Mr. Oka is kindly representing Pro Bono, the corporate appellants. And I'm thankful for this opportunity. If I can please save like half of the time for the rebuttal, as it were, I'd be grateful. And if there's any extra time that you think is necessary, then I would be thankful if you. Okay. The management of the time is up to you and counsel. Yes, I would like to do my best to put it within the time. But in the end, if I run out, I'll try to use up about 10 minutes. And given that a lot of the criticism in this case is about my behavior and about the number of docket entries or the cases or multiplication, et cetera, I would like to please summarize very quickly how we got into this situation. And, Your Honor, I am not a lawyer, but I have a master's degree in computer science, and I started a business in Japan trying to help U.S. companies get into Japan. And I had this degree from Seattle, Washington. So there is a company in Seattle, but the main company that carried on the business was in Japan. So after about three years of a relationship with this QAD company, rather, they went public in 1997, and they wanted out of the relationship. From that came a dispute. They brought to California by filing a case in state court in January 1998. So I was brought as a defendant. And at that time, I had attorneys from Seattle, a firm called Bogle and Gates. They were our corporate attorneys, and they started defending the Washington Corporation. And we had insurance with St. Paul, so we tendered defense of this to St. Paul. And St. Paul agreed to undertake it under a reservation of rights, correct? Yes, Your Honor. A severe reservation of rights, they called it. But even though they approved of Bogle and Gates, they did not want to pay the rates that Bogle and Gates charged. So what ended up happening was that they would pay according to their rates, which were half or less, and they would also strike off various items as unnecessary. And it's kind of like getting reimbursed in an HMO or something. Delayed and partial payments and so on. So the small business had to make up the difference. So even though we had this insurance, St. Paul never appointed attorneys from the insurance side. They only said their acceptance of tender meant that they would pay for these independent attorneys. Unfortunately, in 1999 ---- Do they have the right under the policy to choose counsel? I do not remember seeing any specific language. I do not believe ---- A mutual piece of insurance that didn't provide that. Yes, Your Honor. It's a standard CGL policy, Your Honor. I don't remember if it specifically said you have a choice. Counsel can correct us if we're wrong. We'll assume that St. Paul was free to pick its own counsel. It didn't have to accept your choice. Yes. They relied upon this California Civil Code 2860 and said under that we only have to pay reasonable charges. So but there has been ---- there's controversy over whether they should have appointed their own counsel or not. But anyway, I did not have full defense, basically. So that policy ---- What relief are you seeking from this Court? Let's try to figure that out. Yes. Your Honor, the order of the district court in this mediation case, I would like this Court to set aside the sanctions. It's a 12b-6 motion and reverse the findings that did not even give a chance to amend those pleadings. I think those pleadings were struck out not based on good law and as a matter of law on the basis of facts in the complaint that should go forward. I would like you to please reassign this case to a different judge and if you find it appropriate. And in the insurance case, I would like you to keep that case in the district court and consolidate it with the mediation case so that it can all proceed together. That is my goal. And let me briefly outline my understanding of this case. Yes. And you or the company's pro bono counsel can explain if I'm wrong. Yes, Your Honor. You had this relationship with the Japanese company QAD. Yes. The QAD is a California company. I don't want to do anything controversial, so just let me go through it. You had a relationship with the Japanese company. A dispute arose. They sued you. You had insurance coverage. You tendered the defense of the suit brought by QAD to your carrier, and St. Paul stepped in under a reservation of right, correct? Yes, Your Honor. Correct. There was discovery taken in that lawsuit, and St. Paul believed that some of that discovery revealed that the acts QAD was complaining of did not occur in the United States but occurred in Japan. That was their belief. I'm not saying they're right. That was their belief. All I want to say, Your Honor, is before the discovery could happen, they brought their tech action. Okay. It's not like they had any new information. They had a sudden, I've used epiphany, maybe strong. Okay. Okay. At some point in time, they were of the belief. Some point. Without discovery. They were of the belief that the events occurred outside the coverage of their policy, so they filed a declaratory judgment action. There's more. They also refused to cover the way they took Japanese company at all, because they said it was not a named party in the insurance policy. So there are a number of reasons. You tried to remove this litigation to Federal court, and that was unsuccessful. Yes. I was alone because the last set of sixth attorney had withdrawn for lack of payment, and I was. This goes back to State court. State court. And the State court suggests mediation. The judge conducted the first mediation in 2003. I didn't ask which judge did it. There was the suggestion that the matter proceed to mediation, correct? In 2004, yes. Okay. And so St. Paul, QAD, and you and your company went into mediation. Yes, Your Honor. At some point during the mediation, you were dissatisfied with what was going on and you left. From the beginning, I wanted to leave in the beginning, but then I was given some  At some point in time, you left, correct? Yes, Your Honor. And the mediation proceeded between St. Paul and the Japanese company QAD. It's a California company, Your Honor. Okay. And that resulted in a settlement. Yes, Your Honor. In which St. Paul paid money to QAD and obtained a release for you. Yes, Your Honor. And the company. Yes, Your Honor. Is that right? Yes, Your Honor. But part of the release said that it did not cover your affirmative claims that you wanted to state against QAD, right? It says in that notice. You were free to pursue those. Yes, it says that. Let me add one thing. The release released, QAD had to release all claims it had against you in that suit and in the subsequent suit. Is that not correct? No, Your Honor. As of March 2004, QAD released all claims up to that point in time, as I understand it, in that document. So it has been argued afterwards that it does not cover subsequent claims, although I don't know if that matters. But that settlement was for the release of the original QAD claim that was brought in California.  Not the others. No way. It's a general release that says everything, but it says up to that point in time. And that's my understanding. And so because the reason it came up is in the QAD case, there was another settlement conference in which QAD refused to give further, confirm that they were releasing all matters up to the future point in time. Okay. After the settlement that St. Paul funded and after you left the mediation, you brought a suit in Federal court alleging that there was a conspiracy. Yes, Your Honor, among other things. And that was dismissed under Rule 12. 12b-6, yes. What happened next? That's all, Your Honor. And that brought what happened, Your Honor, is going into the mediation. The reason I was opposed to the mediation, and this is critical to understanding why all of these things come about, is that you attempt to remove the State court case to Federal court a second time? Your Honor, what happened is the QAD. Can you start with a yes or no? I filed a second notice of removal, Your Honor, both in the QAD and the insurance case. Your Honor, the QAD case had already been removed to the Federal court when they announced their oral agreement to settle. And the second notice of removal was simply my way of bringing in new evidence. I thought that there was new evidence since the filing of the first notice of removal. And my understanding is that in a Federal jurisdiction matter, when you remove, you are constrained to the evidence at the time of removal. So when that is still in dispute, if new evidence comes, there is no way to put it before the Federal court. You're now inside of 10 minutes of your time. You folks can use it as you wish, but you're into the 10 minutes. You said you were going to offer counsel. We'll take two minutes to say one thing, and then I will come back to you, Your Honor. Your Honor, going into the mediation, the reason I did not was not happy with the mediation is because there was conflicts of interest all over. St. Paul, the attorney, Mr. Greenan, who is here and who will address Your Honors, was the attorney defending the counterclaims and prosecuting the insurance declaratory action. There was an adjuster, but they were together. Their interest was in protecting St. Paul from the bad faith claims and not in protecting Vedetech parties who were there for the mediation.  If you could use one of those minutes to explain to me how St. Paul's payment of a disputed claim as to coverage, gaining you and the company a complete release, constituted bad faith. Your Honor, they claim in their declaratory action that the policy has been rescinded and it's void. And they have not changed their position to this day. But then they say their right to settle this came because of the policy, number one. Number two, they also – I wanted my day in court to prove that the claims that Vedetech brought were wrong. Under California law, my understanding, Your Honor, is that the insurance company should give a chance for the insured to take over the defense. They can come and say, we're paying all these defense costs. We're going to settle for this. If you don't like it, then release us, because then we will not be responsible for your case anymore. They didn't. They did it secretly, and that is the bad faith, Your Honor. Roberts.  We'll hear from counsel at this time. What Mr. Subramanian was trying to set up was a major issue in this are the sanctions. And we were going to show those sanctions and bring it back to the other issues, the underlying issues. And that made his behavior – What were the sanctions for? He was sanctioned for challenging – well, under the 12b-6, the dismissal, he was sanctioned for bringing his claims against Mr. Wolf, and those were dismissed as under California law as being – well, they were immune, that Mr. Wolf was immune. Bringing that on, that was – he was sanctioned for that. He was sanctioned for attempting to remand his other cases to Federal district court based on a Federal question. He was sanctioned for – well, those are the two main things. I thought one of the – part of the rationale for the sanctions was attempting to remove a second time a case to Federal court which were – that had been remanded. Am I wrong about that? Well, that was one of the things he mentioned. And Mr. Subramanian had tried to mention that. He attempted – I think it was 2004. Counsel was kind enough to make their own chronology. We had our own, but it was a little too extensive to distribute. When Mr. Subramanian attempted to remove it the first time, he was told that there was no corporate counsel. It didn't work out. That was the first time. He attempted again. He was told it was too late. Those were the two times he attempted. And no subject matter restriction was found, and then that was it. What the opponents may mention was that this was brought to the Ninth Circuit previously. And Mr. Subramanian attempted to bring it here, but that died in motion and was considered a motion for reconsideration and ended there. I don't know where the en banc reference came from. Those were those previous attempts. What standard of review do we use here? Abuse of discretion by the district court. Well, for the sanctions. Yes. Abuse of discretion. Are the sanctions partly under Rule 11 and partly under 1927? Right, Your Honor. Judge Walker had mentioned 1927, and then, of course, under 1927. We're bringing multiple, multiplicity of things and being vexatious. However, as we provided in the excerpts, a lot of the actions we took place were, again, mistakes like in the removal, failure to join a corporate party, and then failure to, well, not failure, excuse me, and then opposing motions to dismiss, opposing an MSJ. We're only trying to protect ourselves. So there wasn't this we weren't trying to be vexatious. We weren't trying to dump a big load onto the docket and burden the court. We were just trying to get it right. Were you counsel at the time? No. No, I wasn't, Your Honor. Actually, he couldn't afford any. Like he said, six attorneys, four major firms, and then it came down to me. He asked me for his help in this particular matter. Was there another question? I'm sorry. Did I miss that? No. I understood that the sanctions for duplicate and many filings was because of the two removals. Am I wrong? I think that was one of the things that Judge Walker added. It was a huge order, 53 pages. And he didn't, well, under this latest case of Livy that came up, and what we're asking here also is that the Court will look at standards from the Third and Tenth Circuit, is that Judge Walker didn't look at what happened under those remands. He didn't, remands and yes, he didn't look at that. And had he looked at that or at least made an effort, we probably wouldn't have appealed that. They were made in good faith. There wasn't any, again, any attempt to burden this court. I believe the Lively court used the word veracity. It doesn't exactly say good faith, but veracity goes to the truthness of what happened. Apart from the objection to the sanctions, are all the other issues possibly moot? The case in state court has been dismissed. There are no claims by V.A.D. against him, and he doesn't have any pending against them. The original complaint back of, I guess, 1999, at that point I believe Q.A.D. did withdraw. They'll let us know in a minute or not. So that's gone. However, when the notice of removals were made most recently by Mr. Subramanian and his counsel then, that sort of left one of the state matters still in limbo, and I believe that's also in the order. So one of those is still there because I don't know if the certification of the remand made it through all the way. So I think there's one still kind of stuck. I thought V.A.D. was dismissed in state court. Oh, no. There were several cases. There was another one that was dismissed, the 1999. I'd like to give you their form, but I'm sure they will. They have a nice chronology for you, and it is a lot to go through. But ---- How much are the total sanctions against your client? I'm sorry? What are the total sanctions against your client? I ---- It was huge. Did you compute them? Well, it was in the five-digit area, and after I saw that, I ---- Well, if you don't know, that's all right. Yeah. And apparently it's still compounding on other matters, should Mr. Subramanian attempt to remedy this. Do I have a minute left? Is that correct? Yes, you do. Okay. I'll hold that for rebuttal. Okay. Thank you. Who wants to start on the other side? Mr. Greenan or Mr. Yellen? May it please the Court, Douglas Young for Appellee Randall Wolfe. The appellees are going to divide our time equally, but there was no substantive argument made on any of the issues as to Wolfe, and so with the understanding and given the rules of advocacy, I intend to make no argument as to the substance with the understanding there will be no argument in rebuttal. I will only address a couple of issues then and cede the rest of my time to my co-counsel. The first is, Your Honors, we do have at the bench for you a chart, a demonstrative chart that we prepared and I believe the clerk placed before you that we have also given to, yes, you did, that's correct, Judge Hawkins. We've also given to counsel and Mr. Subramanian. It is based upon Judge Walker's order. It tracks Judge Walker's order and the docket in the various cases and outlines, I think, nicely how we get here and some of the issues that underline and support Judge Walker's sanctions in this case. By our count, and you'll see here as you compare to the docket, there were five removal efforts here. There were at least three improper appeals from remand orders. They were improper under 28 U.S.C. 1447d. By our count, there are approximately 600 or so docket entries in total and approximating 200 or so in this case alone. This is not a situation in reality of a pro se defendant who is any pro se defendant. If you look at the excerpt of record page one and following, you will see that he has always employed many lawyers, major law firms on occasion, international law firms on occasion. He has always had at least one attorney at his side and at least two attorneys throughout the litigation in federal court here. If you look at the record, the supplemental excerpts of record at Exhibit S, you will see the manner in which he refers to himself. His e-mail address is prosedefendantatyahoo.com. We submit that this is a reflection of the fact that this has become something of an advocation for him and something that is inappropriate at every level. The case at this point has resulted in attacks on two district court judges, a state court judge, some of the counsel here, some of Mr. Subramanian's own counsel, and ultimately upon the mediator. In our view, this is not just misguided advocacy. It's vexatious and entirely inappropriate, and the sanctions were appropriate, and we ask that you affirm in every respect, unless you have questions for me. Kennedy. Do you know the total number of sanctions and amount or somebody else is going to tell you? Someone else. Mr. Greenan is going to address that. Okay. All right. Okay. I just wondered what it would be. Okay.  Thank you, Counsel. Mr. Greenan, are you next? Let me answer a couple of questions that the Court's been asking and correct some of the answers that Mr. Subramanian gave. The total amount of sanctions against Mr. Subramanian and Vedatek are $44,337.75. And those – and there is also an additional $5,000 in sanctions against Mr. Subramanian's counsel, Ms. Gonzaga. And what about attorney's fees? Excuse me? Attorney's fees? Well, Your Honor, let me correct that. The 20,783 are attorney's fees, not sanctions. The 22,584 for Mr. Wolf and the $1,000 against Mr. Subramanian for improper removal are both sanctions. The $5,000 against counsel is sanctions. And let me tell you where those sanctions were awarded. 20,783 were sanctions for – that the Court found appropriate under the removal section of the federal rules. And the Court found that since the removal was improper, although it wasn't going to find the removal itself was in – the first removal was in bad faith, the Court found that it would be appropriate to award St. Paul's attorney's fees for having to defend against that removal. So that's 20,783 of the attorney's fees. In addition, the Court found that the second removal, which was the removal that took place in May of 2004, the first removal of that case was in April of 2004. That second removal occurred while there was a motion for remand pending filed by St. Paul. And the Court – Judge Walker's reason for awarding the $5,000 in sanctions against Vedatech and against – $1,000 against Vedatech and $5,000 against counsel was because by the time the second removal occurred, there was no action pending in State court to be removed. And any attorney that has practiced in Federal courts should know that the first removal removes the State court of jurisdiction from the case, and that's why the Court found that that removal was in bad faith. So those – and the appeal here that Mr. Subramanian has filed is, with regard to St. Paul, is primarily an appeal for – from the award of sanctions against himself and his attorney and the award of attorney's fees against Vedatech and Mr. Subramanian for the improper removal of the – the declaratory relief case. That's – we've prepared a chart that tracks all these things that they're – they're a little bit hard to keep track of. As we say at the end here, at least on the final case, the fourth case, there are 54 docket entries, so it's a little bit hard to keep track of things. Is it a fair summary of what occurred with respect to your client? Well, Your Honor, there are – Let me finish. Just tell me if this is a fair summary. Okay. That an insured brought to the attention that they had been sued, St. Paul and Vedatech undertook a defense under a reservation of right when it discovered facts that suggested that there was no coverage brought a declaratory judgment action. When there was an action filed by Vedatech and its president affirmatively against the company, a separate action, St. Paul declined to fund the prosecution of the action because, in its view, the policy did not cover. Ultimately, these things went to mediation, and in mediation, the suit was settled with QDA for half a million dollars? Half a million dollars. And as part of that, you obtained a full release of the individual and the company, but they were left free to pursue their own claims if they wanted. The settlement agreement provided that the settlement did not impair the rights of Subramanian and Vedatech to pursue its own claims. And let me correct a misstatement that Mr. Subramanian made. The entire action by QAD against Vedatech and Subramanian was dismissed, everything that was pending at that time. Now, Mr. Subramanian may have filed subsequent actions, but everything up to that time was dismissed. Let me just turn for a moment to the declaratory relief action. There's another misstatement, I'm afraid, that Mr. Subramanian made, and that is that there he doesn't he I don't think he really understands what continues to be pending. The only thing that is presently pending is the declaratory relief action in State Court. Now, that action was removed three times. The court in Judge Walker, in his decision, decided that under the Colorado River case, the court would abstain. The court's order provides that that case will go back to State Court. It will be litigated in State Court. Whatever actions or claims Mr. Subramanian has against St. Paul can be fully litigated in that action, and when that action is concluded, a report is to be given to Judge Walker, and then the declaratory relief action will be dismissed. So that's the present pendency of things. I'd just like to say a couple of words about the dismissal of the action, the fourth action here that Mr. Subramanian filed. That action was dismissed for the primary reason that action was dismissed is because Mr. Subramanian could demonstrate no justifiable reliance. He was ordered by the Judge Comar in Santa Clara County to attend that mediation, and so Judge Walker concluded, since he was ordered to attend, he could not show any justifiable reliance and, therefore, he couldn't show any fraud. And the last thing I want to say, Your Honor, is that Mr. Subramanian challenges what St. Paul did here. St. Paul, under the Hurwitz case, which is cited in Arbreeze, has an absolute right under his policy to settle the case without any interference with the insured, and that's what it did. It got him a complete release. And why is he complaining? He is solely complaining because St. — because the settlement of that case precluded him from using the money that St. Paul was paying him and his counsel to pursue the affirmative cases — affirmative case and claims that he wanted to pursue against QAD. And that's — that was the reason he filed that case, and the — the Judge Walker concluded that — that that case was — was properly dismissed. And that's all I have to say, unless the Court has any further questions. I don't see any. Mr. Connell. Thank you, Your Honor. May it please the Court, I am William Connell, and I represent Respondents QAD, Inc. and QAD Japan, KK. I would like to clarify, although Mr. Greenan may have already done so, the settlement of QAD's claims was complete at the time. There are no — QAD has no claims pending against Mr. Zubermanian or the Vedatech entities. They were dismissed in this settlement agreement, and it was a full and complete settlement agreement at the time. St. Paul paid your client on behalf — St. Paul. And that dismissal was in return for a payment from St. Paul of half a million dollars. Essentially, what QAD did here was settle a case against Mr. Zubermanian and the Vedatech parties. It had every right to do so. In this suit, which has now been dismissed against the QAD parties, plaintiffs — or the appellants have shown no authority for the proposition that QAD is liable to them in any manner for settling the lawsuit against them. And essentially, that's the simple case with respect to QAD. Whether or not they have any claims against St. Paul, whether St. Paul fulfilled its obligations or not, is a matter of no moment to the QAD parties. Hurwitz makes it clear, as Mr. Greenan said, that St. Paul had the right to settle the case. But even if it's found that they didn't comply with their requirements under Hurwitz, there's nothing in Hurwitz or in any other case that suggests that the liability to the insured for having settled the case, dismiss their claims. We did everything that was required by the settlement agreement, and that's it. Okay. I don't see any other questions. Thank you for your argument. You have a little bit of time for rebuttal, a little over a minute. And you can't split this up. Whoever stands up gets the minute. Okay. I probably didn't explain myself carefully. I wanted to split between the rebuttal and this. If Your Honor feels I would need a bit more time, I would really ask only because the amounts of sanctions and the charges are quite serious. And it takes me some time to explain to you, Lordship. Number one, the Hurwitz decision. In the Hurwitz decision, St. Paul was the defendant. St. Paul sent a letter. St. Paul had control of the defense, so they were paying for the defense and they were controlling the defense. They sent a letter to the Hurwitz saying, you can take over the defense or we will settle it. And they said no, so St. Paul went ahead and did that. In this case, there is a question, difficult question, why would someone not want their cases settled? But before we come to that, what I first want to submit is that they did not have a right to settle, not under Hurwitz, not under any existing law. So the reason I did not want St. Paul to settle is they were taking the money that they had withheld. Roberts. Let me stop you for just a second, okay? You were told when you came in here today that you would be held to the same rules as any lawyer who walked in here. The time constraints apply to all lawyers. I'm going to give you one minute. Put one minute on the clock, please. Yes.  Yes, Your Honor. Or you may face some other sanctions. Do you understand? I apologize, Your Honor. Okay. Start. Yes. Your Honor, number one, I'm thankful, Your Honor, and I apologize. I don't – I mean no disrespect. I'm doing my best. I became a defendant, and if I didn't defend, I get default judgments. Now I have the sanctions amount, and QAD has taken the position that the sanctions amounts are not covered by the settlement agreement. So there is no new case, but there's these sanctions. And I had to become pro se in 2002 because I couldn't afford the lawyers. And so I had a choice. I could walk away or I could proceed to try to defend myself. I've tried to do my best. And if I've come up short, then I apologize. So under the Hurwitz decision, there is no right for St. Paul to settle. I did not want them to settle because they took money that was kept for reimbursing, and the settlement gave them the fig leaf to not pay the tax. Your Honor. Thank you. Thank both sides for their arguments. The case is argued and will be submitted for decision, and the court will stand in recess for the day. This court for this session stands adjourned.
judges: B. Fletcher, Siler , Hawkins